UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

TONY WARREN,                           )
                                       )
          Petitioner,                  )
                                       )
v.                                     )     No. 1:10-cv-253-SEB-TAB
                                       )
ALAN FINNAN,                           )
                                       )
          Respondent.                  )

**Entry Discussing Petition for Writ of Habeas
Corpus and Denying Certificate of Appealability**

**I.**

Tony Warren ("Warren") seeks habeas corpus relief with respect to his 2004 conviction for murder in an Indiana state court. Having considered Warren's petition, the respondent's return to order to show cause, Warren's reply and the expanded record, the court finds that Warren's habeas petition must be **denied** and this action **dismissed with prejudice.**

**A. Background**

The pleadings and the expanded record establish the following:

1.      On February 11, 2003, Warren and Adam Whitney were each charged as the principal and, in the alternative, as an accomplice of the other, in the October 31, 2004, murder of Jacob Mecatl, from whom they had arranged to buy marijuana. Other charges against Warren--felony murder, robbery, and carrying a handgun without a license--were also filed. Warren was convicted after trial by jury of murder.

2.      Warren's conviction was affirmed on direct appeal in *Warren v. State,* No. 49A05-0512-CR-702 (Ind.Ct.App. 2006)(*Warren I*). The trial court's subsequent denial of Warren's petition for post-conviction relief was affirmed on appeal in *Warren v. State,* No. 49A04-0905-PC-267 (Ind.Ct.App. 2009) (Warren *II*).

      3.      The circumstances surrounding Mecatl's death and the prosecution of Warren and Whitney were summarized by the Indiana Court of Appeals in Warren's direct appeal:

> On October 31, 2004, Adam Whitney and Tony Warren arranged to buy marijuana from Jacob Mecatl. Warren drove Whitney to meet Mecatl. Once they arrived at the designated location, Mecatl sat down in the front passenger seat of Warren's car, and Whitney sat immediately behind Mecatl in a rear passenger seat. Warren got out of the driver's seat and sat next to Whitney in the back seat, and Jairo Ramirez, who was with Mecatl, sat in the driver's seat.
>
> Warren told Ramirez to drive a short distance, and Ramirez complied. Ramirez then stopped the car and got out. Warren also got out of the car and talked to Ramirez. Both men established that the other was not armed with a gun. Warren then got into the driver's seat of the car, and Mecatl told Ramirez that he was uncomfortable with Warren sitting in the driver's seat. When Ramirez relayed that information to Warren, Warren drove the car away from where Ramirez was standing. After Mecatl tried to grab the steering wheel, Mecatl was shot three times. Warren and Whitney dumped Mecatl's body in a grocery store parking lot located on Pike Plaza Road, drove to a friend's house, and divided the three pounds of marijuana they had stolen from Mecatl.
>
> Ramirez subsequently looked at a police photo array and identified Whitney as the man sitting behind Mecatl in the car right before the shooting. Ramirez identified Warren as the driver of that car. An autopsy of Mecatl's body revealed that he died as a result of the gunshot wounds.

*Warren I,* at pp. 2-3. Whitney and Warren were tried together.

> Whitney testified that Warren was the one who shot Mecatl. The trial court instructed the jury in part that the need to render a verdict on the carrying a handgun without a license charge against Warren had been "removed from [the jury's] consideration" and that the jury "must not speculate on the reason for [that] or consider it in [the jury's] consideration of the remaining charges as to either defendant." Appellant's App. at 90. The trial court further instructed the jury that the defendants may be found guilty of murder either under Indiana Code Section 35-42-1-1 or under the accomplice liability statute, Indiana Code Section 35-41-2-4.

*Warren I,* at p.3. Warren was convicted of murder. A directed verdict was granted as to the carrying a handgun without a license charge and a mistrial was declared as to the felony murder and robbery charges.

      4.      In his direct appeal Warren challenged the sufficiency of the evidence. That challenge was rejected, with the Indiana Court of Appeals explaining that Indiana recognized the doctrine of accomplice liability, that certain factors were considered to determine whether a defendant aided another in the commission of a crime, and, after reviewing the evidence, concluded that "[b]ased on these facts and affirmative conduct, a reasonable jury could have concluded that Warren knowingly or intentionally aideed in thee

commission of Mecatl's murder." *Warren I,* at p.3 (footnote omitted).

     5.    In his action for post-conviction relief Warren presented a single issue, which the Indiana Court of Appeals identified as "whether Warren received ineffective assistance of trial and appellate counsel when his trial counsel failed to object to a jury instruction on accomplice liability and his appellate counsel failed to argue that the instruction was fundamental error . . . ." *Warren II,* at p. 2.  The Indiana Court of Appeals rejected this argument, finding that the challenged instruction was a correct statement of the law and that Warren's counsel could not have been ineffective for failing to argue otherwise. *Id.*, at p. 3.

### B.  Warren's Habeas Claim

Warren claims that he was denied the effective assistance of counsel both at trial and in the direct appeal. His contention is the same as presented in *Warren II.*

### C.  Applicable Law

Warren seeks relief pursuant to 28 U.S.C. § 2254(a). In the exercise of its habeas jurisdiction, a federal court may grant relief only if the petitioner shows that he is in custody "in violation of the Constitution or laws of the United States." *Id.*

> When a habeas petitioner's claim was "adjudicated on the merits in State court proceedings," section 2254(d) of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that a federal court may grant a writ of habeas corpus only if: (1) the state court's adjudication of the claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court of the United States, 28 U.S.C. § 2254(d)(1), or (2) the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2).

*Cheeks v. Gaetz,*, 571 F.3d 680, 684 (7th Cir. 2009). "Clearly established federal law" means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003).

> !    As relevant here, a state court's decision is "contrary to" federal law if it is "substantially different" from or "opposite to" relevant Supreme Court precedent. *Williams v. Taylor,* 529 U.S. 362, 405 (2000); *Sutherland v. Gaetz,* 581 F.3d 614, 616 (7th Cir. 2009).

> !    Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *Williams,* 529 U.S. at 407; *see also Badelle v. Correll,* 452 F.3d 648, 653 (7th Cir. 2006). "A decision is not objectively unreasonable unless it falls well outside the boundaries of permissible differences of opinion." *Leiser v. Thurmer*, 2010 WL 828494, *2 (7th Cir. 2010) (internal quotation marks omitted).

"Under AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v.*

*Acevedo,* 590 F.3d 533, 536 (7th Cir. 2010); *see also Leiser,* 2010 WL 828494 at *5 ("Because the Wisconsin court reviewed the merits of this claim directly, we may review the Wisconsin court's decision rather than conduct our own ineffective-assistance analysis.")(citing *Sturgeon v. Chandler,* 552 F.3d 604, 611-12 (7th Cir. 2009)). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes,* 380 F.3d 1034, 1043 (7th Cir. 2004)(citing *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002)).

The other circumstance in which a federal court may grant a petition for habeas relief from a state court judgment where the state courts have reached the merits of a claim exists "if the state court decision . . . 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Smith v. Grams*, 565 F.3d 1037, 1043 (7th Cir. 2009)(quoting 28 U.S.C. § 2254(d)). "In conducting this deferential evaluation, [a federal habeas court] presume[s] that the state court's factual determinations are correct, a presumption the petitioner may rebut only by clear and convincing evidence." Id. "Under § 2254(e)(1), 'a determination of a factual issue made by a State court shall be presumed to be correct,' and the petitioner 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Wood v. Allen* 130 S. Ct. 841, 845 (2010). In addition, "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* at 849.

**D. Analysis**

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington,* 466 U.S. 668, 684 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.,* at 686. For a petitioner to establish that "counsel's assistance was so defective as to require reversal" of a conviction or a sentence, he must make two showings: (1) deficient performance that (2) prejudiced his defense. *Id*., at 687.

> Under *Strickland,* a defendant alleging ineffective assistance of counsel must show that trial counsel's performance fell below "an objective standard of reasonableness," 466 U.S. at 688, and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. *Strickland[']s* first element requires proof that the petitioner's trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Our review of the attorney's performance is "highly deferential" and reflects "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). The second part of the *Strickland* inquiry requires a showing of prejudice, that is, proof that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A "reasonable probability" of a different result is one sufficient to undermine confidence in the outcome." *Id.* at 694.

*Davis v. Lambert,* 388 F.3d 1052, 1059 (7th Cir. 2004).

The foregoing outlines the straightforward features of *Strickland's* two-prong test. In the context of a claim such as Warren presents, however, AEDPA raises the bar:

> The bar for establishing that a state court's application of the *Strickland* standard was "unreasonable" is a high one: we have stated on prior occasion that "'*only a clear error* in applying *Strickland* would support a writ of habeas corpus,'" *Dixon v. Snyder*, 266 F.3d 693, 700-01 (7th Cir. 2001) (quoting *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997)), because "*Strickland* calls for inquiry into degrees," thereby "add[ing] a layer of respect for a state court's application of the legal standard." *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001) (emphasis added). Accordingly, this Court *is obligated to affirm the district court's decision to deny the writ, so long as the Wisconsin Court of Appeals* "t[ook] the [constitutional standard] seriously and produce[d] an answer within the range of defensible positions." *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000) (emphasis added).

*Murrell v. Frank,* 332 F.3d 1102, 1111-12 (7th Cir. 2003). This elevated standard is recognized by the Supreme Court in its habeas jurisprudence:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable--a substantially higher threshold."

*Knowles v. Mirzayance,* 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 127 S. Ct. 1933, 1939 (2007)).

The Indiana Court of Appeals correctly recognized the *Strickland* standard, noting each of its two prongs. *Warren II,* at pp. 5-6. The analysis followed: Although the challenged instruction (28(B)) was not taken from the Indiana pattern jury instructions, when read as a whole the instruction correctly informed the jury of the requisite *mens rea* for knowingly or intentionally aiding, inducing or causing murder. *Id.*, at p. 10. A jury instruction of this character–that is, an instruction which is a correct statement of the law and which addresses a topic germane to the issue(s) the jury is being required to resolve– is not an instruction as to which an objection would be sustained. It is not deficient performance of counsel a trial to refrain from making such an objection, *Hough v. Anderson,* 272 F.3d 878, 898 n.8 (7th Cir. 2001) ("It is not deficient performance to fail to raise an argument with no real chance of success."), and it is not deficient performance of appellate counsel to refrain from including the matter as an issue in an appeal. *Lee v. Davis,* 328 F.3d 896, 901 (7th Cir. 2003) (there must be reasonable probability that issue not raised would have altered outcome of appeal).

Because this court cannot find that the Indiana Court of Appeals "unreasonably applie[d] [the *Strickland* standard] to the facts of the case," Warren's claim of ineffective assistance of counsel both at trial and in his direct appeal does not support the award of habeas corpus relief. *Murrell* at 1111-12 (citing *Bell v. Cone,* 535 U.S. 685, 694 (2002))

**E. Conclusion**

This court has carefully reviewed the state record in light of Warren's claim and has given such consideration to his claim as the limited scope of its review in a habeas corpus proceeding permits. "A defendant whose position depends on anything other than a straightforward application of established rules cannot obtain a writ of habeas corpus." *Liegakos v. Cooke,* 106 F.3d 1381, 1388 (7th Cir. 1997). No such established rules entitle Warren to relief in this case. Warren's petition for a writ of habeas corpus is therefore **denied.** Judgment consistent with this Entry shall now issue.

**II.**

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2254 proceedings, and 28 U.S.C. § 2253(c), the court finds that Warren has failed to show (1) that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 08/10/2010

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana